THE LORD CONSTRUCTION COMPANY, Plaintiff, *v.* THE EDISON PORTLAND CEMENT COMPANY, Defendant.

First Department, November 18, 1921.

Contracts — construction and operation — action by buyer for breach of contract for sale of cement to be delivered within time specified as ordered by buyer — deliveries ordered in lots that would not permit completion of contract within time limit — waiver by defendant of time limit for delivery not shown by accepting modified order or making deliveries after time specified — measure of damages.

In an action to recover damages for the failure of the defendant to perform a contract for the sale of 60,000 barrels of cement, it appeared that the cement was to be delivered as ordered by the plaintiff but that deliveries were not to be made after December 31, 1917, except at option of defendant; that in October, 1917, plaintiff ordered 1,000 barrels to be delivered every two days and later directed the defendant to deliver only 250 barrels every two days, and that the defendant failed to deliver 250 barrels every two days up to December 31, 1917, and made four shipments after that date.

*Held,* that defendant did not waive the time limit of December 31, 1917, by accepting the plaintiff's directions to reduce the amount of deliveries to such an extent that the total amount could not be delivered before that date, since under the contract the defendant could do nothing else but accept the modified order;

That defendant had the right to avail itself of the time limit specifically placed in the contract for its protection and was not bound to notify the plaintiff of its intention so to do.

The deliveries made after the expiration of the time limit did not constitute a waiver on the part of the defendant, since it had the option to continue deliveries after that time.

Plaintiff is entitled to recover as damages the difference in the contract and the market price of the cement which defendant failed to deliver under the modified order and the defendant is entitled to recover on its counterclaim for the cement delivered and not paid for.

GREENBAUM, J., dissents, with opinion.

MOTION by the defendant, The Edison Portland Cement Company, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance after the rendition of a verdict in plaintiff's favor upon a trial before the court and jury at the New York Trial Term in March, 1921.

*Gregory, Stewart & Wrenn* [*Martin Conboy* of counsel; *Allen S. Wrenn* and *Edwin N. Moore* with him on the brief], for the defendant, for the motion.

*Larkin, Rathbone & Perry* [*Albert Stickney* of counsel; *Francis C. Nickerson* with him on the brief], for the plaintiff, opposed.

SMITH, J.:

The action is brought by the plaintiff upon an allegation for the breach of a contract made between the plaintiff and the defendant for the sale of certain cement which was to be used by the plaintiff in the construction of certain government work on Long Island. The defendant's answer denies the allegations of breach and asserts a counterclaim for the sum of $7,239.82, with interest. Upon the trial of the action the court held, as matter of law, that there was owing to the defendant $6,339.82, and the interest thereupon was $1,192.02, making $7,531.84, for which the defendant should have an offset as against the damages which were held to have been suffered by the plaintiff for the defendant's breach.

The contract between the parties provided for the sale by the defendant to the plaintiff of approximately 60,000 barrels of cement. The place of delivery was alongside dock Coney Island, N. Y., in lots of not less than 500 barrels. The contract then reads: " Time of delivery during life of job, estimated to be completed by December 31st, 1917.

"The Purchaser shall give the Cement Company shipping instructions, in writing, a reasonable time before shipments are to be made; the Cement Company shall not be obliged, except at its option, to make deliveries after December 31, 1917. The Cement Company shall have the right to direct the route by which all shipments hereunder shall be forwarded."

The price per barrel was to be one dollar and sixty-three cents, which was to be paid for in thirty days from the date of invoice. This contract was dated on the 4th day of May, 1916. Down to October 27, 1917, less than 20,000 barrels of cement had been delivered under the contract. How much was demanded by the plaintiff for that time does not seem to appear, but the fact appears that at one time in order to meet the government tests the plaintiff was required to get

some cement from another company for which an adjustment was made between the plaintiff and the defendant. Upon October twenty-seventh, however, the plaintiff gave an order for 15,000 barrels of cement to be delivered, 1,000 barrels every two days. Upon October thirty-first a further order was given for 13,800 barrels to be delivered, 1,000 barrels every two days "when previous orders are filled." Under the contract, therefore, and under these orders the defendant was required to deliver 1,000 barrels every two days until 28,000 barrels had been delivered. It was estimated that that would be the amount of cement required to complete the job. The defendant made preparation for this delivery, the tests required by the government were made and the cement set aside to perform the contract. Upon November 24, 1917, however, after the giving of these two orders, the plaintiff wrote to the defendant substantially as follows: " With reference to our cement delivery for Coney Island, we find that on account of shortage of stone and gravel we are unable to use the cement as fast as our request sent to you would justify, and, therefore, would like to have you hold up for the time being to the extent that our maximum requirements will be 1,000 bags per day.

" We appreciate very much the extra effort that you made to get cement to us and we trust that the change mentioned above will not inconvenience you."

A barrel of cement consists of four bags, so that 1,000 bags a day would be equal to 250 barrels. In response to this letter, and upon December third, the defendant wrote to the plaintiff: " In accordance with yours of November 24th, we have reduced shipping schedule on contract for the Coney Island Terminal to approximately 250 barrels, or 1,000 sacks daily."

The defendant thereafter shipped cement at various times before December thirty-first, and made four shipments thereafter, but upon January eighteenth it refused to make further shipments on the ground that under the contract it was not required to ship any cement after December 31, 1917, except as it should elect so to do. The defendant took the position frankly that cement had largely increased in value and that it was entitled to the benefit of the limitations put in the

contract, presumably, to meet this very condition. The claim of the plaintiff, however, is that this letter of December third, wherein the defendant said that it had reduced the shipping schedule on contract for the Coney Island Terminal to approximately 250 barrels a day, constituted a waiver of the time limitation and a consent to deliver all the cement that had theretofore been ordered, to wit, the 28,800 barrels, notwithstanding the time that would necessarily be extended thereby beyond December 31, 1917.

Upon January 18, 1918, the market price of cement was two dollars and seventy-five cents a barrel, so that the plaintiff's measure of damage for failure to deliver any cement which the defendant was required under the contract to deliver would be one dollar and twelve cents per barrel.

As I read this contract it was evidently contemplated that the work upon this construction was to be completed by December 31, 1917. Notwithstanding that this fact was contemplated, the defendant has protected itself by the specific provision that no deliveries should be made except at its option after December 31, 1917. Deliveries were to be made when demanded by the plaintiff. Upon October twenty-seventh the plaintiff gave an order for 15,000 barrels of cement and upon October thirty-first a further order for 13,800 barrels of cement. These deliveries were to be made in quantities of 1,000 barrels every other day. Had these orders not been modified this judgment would clearly be right, because the defendant was bound to make the deliveries pursuant to these orders. But upon November twenty-fourth the order was modified calling for 250 barrels a day, and under the contract the defendant was not authorized to deliver more than enough to comply with that modified order. In the letter of December third the defendant stated that it had reduced the shipping schedule to approximately 250 barrels a day. As no further modifications were made of this order prior to December thirty-first, and as it was in duty bound under the contract to deliver 250 barrels a day from November twenty-fourth to December thirty-first, the plaintiff would seem to have a right of action for damages only to the extent of 250 barrels a day from and after November twenty-fourth, less the number of barrels that were in fact delivered after that

date. The plaintiff has furnished evidence of the deliveries after December third, the date of the claimed acceptance of the modification, and at the rate of 250 barrels a day after December third, the defendant would have been required to deliver 7,000 barrels of cement before December thirty-first. Of this there was an undelivered balance of 4,661½ barrels. But four deliveries were made after December thirty-first, amounting to 897 barrels, which would reduce the undelivered balance to 3,764½ barrels.

In my view of the case the modified order took effect as of November twenty-fourth, or, at least, November twenty-fifth, the presumptive date of delivery to the defendant. As the plaintiff has made proof, however, simply of the deficiency existing upon the basis of a modified delivery after December third, which it calls the date of acceptance, and has made no proof of the delivery between November twenty-fourth and December third, plaintiff cannot complain if we assume this delivery to have been modified as of December third. If I read the testimony aright, therefore, the plaintiff would be entitled upon its cause of action to damages in the amount of $1.12 upon 3,764½ barrels of cement, with interest from January 18, 1918. The defendant would be entitled to the amount which the parties conceded as due for cement unpaid for, to wit, the sum of $6,339.82, with interest from the dates upon which payments thereof became due, which would leave a balance due the defendant upon its counterclaim, and for which judgment should be ordered.

The plaintiff's contention, however, upon which it has prevailed in the court below, is that by the letter of December third the defendant waived the time limit for the making of deliveries under the contract, to wit, December 31, 1917, or, at least, by making deliveries thereafter that it waived that time limit. I find nothing in the letter of December third which can be construed in any way as a waiver of the right of the defendant to assert its rights under the time limit in the contract. It was required to make deliveries as ordered by the plaintiff. The deliveries ordered on October twenty-seventh and thirty-first, amounting to 28,800 barrels of cement, required the defendant to make delivery thereof under the contract. Whether the plaintiff was not

ready to pay for the same, or whether it had not storage facilities for the cement if then delivered, or for whatever reason, this order was modified upon November twenty-fourth. The defendant could do nothing else but accept the modified order and make the deliveries as required by that modified order, but, nevertheless, it had the right to avail itself of the time limit specifically placed in the contract for its protection.

The plaintiff seems to take the position that the defendant by not notifying it that it intended to take advantage of this provision of the contract, has waived provisions and has misled the plaintiff. This argument is wholly without force. It is very clear from the evidence that both parties had in mind this provision of the contract. Confessedly the defendant had it in mind and intended to take advantage of it, and the plaintiff had it in mind as is shown by the letter of October thirtieth to the defendant, wherein the plaintiff says: " Our total requirements will be approximately between 28,000 and 30,000 barrels, and which will have to be shipped continuously at the rate of 1,000 bbls. every two days." Whether or not, however, the plaintiff had in mind this provision of the contract, in law it is conclusively presumed to have knowledge thereof. The acknowledgment by the defendant of the modified schedule by the letter of December third was simply an acknowledgment that the defendant would act as it was bound to act under the contract to make deliveries when ordered, and the letter contains not one word indicating an intention to waive any rights it might have under the time limit in the contract.

Nor do the four deliveries after December thirty-first indicate any such intention. Upon December thirty-first, under the deliveries lawfully authorized, it had failed to deliver 4,661½ barrels of cement which it was required to deliver or pay damages therefor. These deliveries might have been for the purpose of making such deliveries under its contract obligation and reducing the damages with which it might be charged. Apart from this consideration, however, the defendant was given the option to make further deliveries if it saw fit, and any further deliveries will be assumed to have been made under that option and not as an intended waiver of the optional rights given to the defendant under the contract.

Without a waiver, therefore, of the defendant's rights under the contract to avail itself of the time limit, the defendant is entitled under the evidence in this case to judgment for the counterclaim conceded over and above the damages for failure to deliver the 250 barrels of cement per day after December 3, 1917.

The exceptions are, therefore, sustained, with costs, and judgment ordered in accordance with this opinion to be settled on notice.

Clarke, P. J., Dowling and Page, JJ., concur; Greenbaum, J., dissents.

Greenbaum, J. (dissenting):

The contract between the parties stated: " Time of delivery during life of job, estimated to be completed by December 31st, 1917." It also provided that " the Cement Company shall not be obliged, *except at its option,* [italics mine] to make deliveries after December 31, 1917."

When on November 24, 1917, plaintiff wrote to defendant saying we " would like to have you hold up for the time being to the extent that our maximum requirements will be 1,000 bags per day. We appreciate very much the extra effort that you made to get cement to us and we trust that the change mentioned above will not inconvenience you," the obvious purpose of plaintiff was to have the defendant exercise its option " to make deliveries after December 31, 1917," and not to insist upon its strict legal right not to be obliged to make deliveries after that date. The reply to this letter is: " In accordance with yours of November 24th, we have reduced shipping schedule," etc.

The reply clearly implied that defendant acquiesced in the request made in the letter of November twenty-fourth, and plaintiff was justified in assuming that defendant had waived the provision of the contract that it was not obliged to make deliveries after December 31, 1917, and had exercised its option to make the deliveries as requested by plaintiff.

To my mind, defendant's reply of December 3, 1917, expresses in effect an unqualified compliance with plaintiff's request.

It must, of course, be assumed that both parties had in

mind, when the letters above mentioned were exchanged between them, the time provisions in the contract; and plaintiff was justified in construing the defendant's reply to mean that the time clause of the contract would be waived " in accordance " with the request made in its letter of November twenty-fourth. Had defendant intended not to comply with this request, it should have frankly so stated and not lulled the plaintiff in the belief that it would make deliveries on the basis outlined beyond December 31, 1917, under the terms of the original contract. Had such a frank statement been made, plaintiff doubtless could have made provisions for storing the cement still required to complete its job, and thus reduced the loss which would result if defendant insisted upon its right to make no deliveries after December 31, 1917.

I am of opinion that the exceptions should be overruled and judgment directed to be entered upon the verdict.

Exceptions sustained, with costs, and judgment ordered in accordance with opinion. Settle order on notice.